JACOB SKINKLE v. THE ESSEX PUBLIC ROAD BOARD.

1. The act of March 31st, 1882, (*Pamph. L.*, *p.* 256,) entitled "An act to authorize the compromising or settling by arbitration of any tax or assessment laid by any public road board in this state," is constitutional.

2. The effect of the act is to give the land-owner or mortgagee a right of review where the assessment is in excess of benefits.

3. The arbitrators must make the assessment conform in amount to the benefits conferred, and it must appear that they are guided by this rule.

4. A mortgagee who has purchased the property covered by his mortgage may apply under the act.

5. The act is retrospective.

6. To entitle the petitioner, under the act, to a review, he must present to the judge such a statement of facts, duly verified, as show, *prima facie*, a case of injustice.

On petition.

Argued at November Term, 1884, before Justices VAN SYCKEL and KNAPP.

For the petitioner, *J. Frank Fort.*

For the respondent, *J. W. Taylor.*

The opinion of the court was delivered by

VAN SYCKEL, J.   Under the laws relating to the Essex public road board, the property of Caleb B. Headley was assessed for benefits by the laying out and widening of Spring-field avenue. ˙ In December, 1876, the said property was sold for the non-payment of said assessment, to the said road board, for the term of fifty years.   The sale to the respondent was made by virtue of a supplement to its act of incorporation, approved March 31st, 1875, (*Pamph. L., p.* 420,) providing for a sale for fifty years, and that the lands so sold "may be held and sold, assigned and disposed of, by said board for the use of the county, with all the rights and privileges of a purchaser at such sale, and subject to the same conditions and limitations."

The petitioner, at the time said assessment was made upon the said premises, held a mortgage thereon, and subsequently became the purchaser of the premises under said mortgage.

An act was passed March 31st, 1882, (*Pamph. L., p.* 256,) entitled "An act to authorize the compromising or settling by arbitration of any tax or assessment laid by any public road board in this state."   Under this act, Skinkle applied for the appointment, by a justice of the Supreme Court, of three arbitrators to settle and adjust the matter in difference between the petitioner and the respondent relative to the assessment aforesaid.   The following questions are thereupon submitted for the opinion of the Supreme Court :

1. Whether the legislature can take from a municipal corporation property it is entitled to hold, except as an exercise of the right of eminent domain and for a public use, and whether the act entitled "An act to authorize the compromis-

ing or settling by arbitration of any tax or assessment laid by any public road board in the state," is in this respect unconstitutional.

2. Whether a mortgagee who has bought the property covered by his mortgage can apply under the provisions of said act.

3. Whether the said act is so imperfect in the matter of provision for a mode or principle to govern the arbitrators, when appointed, as not to be capable of being carried out.

4. Whether the act is retrospective as regards property sold before it was passed.

5. What considerations are to guide the judge in deciding whether it is a proper case for arbitration.

*First.* Does the act of March 31st, 1882, authorizing a settlement by arbitration, illegally interfere with vested rights?

The right of property which inheres in the road board is derived exclusively from the sale and purchase of lands for a term of years, for non-payment of assessments imposed for the purpose of projected improvements within the limits of the road board district.

The Dartmouth College case is cited in support of the proposition that the legislation in question impairs the obligation of contracts. Dartmouth College was a private, eleemosynary institution, endowed with a capacity to take property for objects unconnected with the government, and its funds were bestowed by individuals on the faith of its charter. The corporation was not invested with political power, and took no part in the administration of local government. The decision of that case turned on the character of the incorporation—whether public or private. The court held that it was to be regarded, when looking at the power of the state over it, as a private corporation, such as a bank or manufacturing company. Hence it was that the hostile legislation was held to be inhibited by the constitutional protection of contracts.

Strictly public or municipal bodies, exercising powers of local government for the population within their boundaries,

have not been held to be within this rule. *Darlington* v. *Mayor of New York*, 31 *N. Y.* 164.

The cases draw a distinction as to property rights of a strictly private character vested in municipal corporations. If such corporation has power to hold devises and legacies to charitable uses, the legislature cannot seize and appropriate them to other purposes. But even in such a case the legislature could deprive the public body of the capacity to act as trustee, in which event equity would substitute a trustee to perpetuate the trust. This course was pursued by the Vermont court in *Montpelier* v. *East Montpelier*, 29 *Vt.* 12, where the municipal corporation held, as trustee, property donated to private uses.

There is another class of cases recognizing in public corporations a vested right in their city halls, markets, water-works, ferries and other like property, as to which it is affirmed that they stand on the same ground of exemption from legislative control and interference as a private corporation. *Atkyn* v. *Town of Randolph*, 31 *Vt.* 226 ; *Grogan* v. *San Francisco*, 18 *Cal.* 590 ; *Benson* v. *New York*, 10 *Barb.* 245.

Upon general principles, immunity from legislative control over such property must be conceded to the extent which will prohibit the law-maker from divesting the title for the purpose of devoting it to private uses, or diverting it to the support or benefit of other municipal bodies. Giving the fullest recognition to the authority of these cases, they do not, in my judgment, control this controversy.

Stating the question in its widest form, it will be whether property purchased by a political body for unpaid taxes, laid to enable it to exercise its granted functions of government, passes beyond legislative control save through the exercise of the power of eminent domain.

As against the state there can be no vested right in the granted power to tax, or to the taxes after they are assessed. The right to repeal such laws at any stage of the proceedings for their enforcement has the fullest recognition. *Belvidere* v. *Warren R. R. Co.*, 5 *Vroom* 193 ; *S. C.*, 6 *Vroom* 584.

There is no restraint upon the power of legislation to control and modify the method of taxation and its collection, or to reduce or altogether extinguish an assessment laid, provided the law is uniform and general in its application, and in its operation co-extensive with the limits of the political bodies to which it relates.

The road board is charged with the construction of a public work, and is furnished with the requisite fund for its execution by taxation of a class of individuals.

Acting as an agency of the state, and for its benefit, what constitutional guaranty can place either the work itself or this fund without the control of legislation, or what can deprive the sovereign of the power to provide for restitution, if it shall be considered that an excessive burden has been cast upon this class of taxpayers? It is true that the assessments, when collected, could not be appropriated to a scheme other than that they were levied to promote, for the supposed benefits to be derived from the work constitute the only equivalent received by the land-owners upon whom the special burden is cast. I think it is equally clear that even after the assessments are collected the legislature may abolish the project for improvement, extinguish the road board and refund the collected taxes to those from whom they were exacted.

But attributing to this legislation the purpose for which, in my judgment, it was framed, a still narrower question is presented. The act directs that the arbitrators shall be sworn; that they shall, within ten days thereafter, view the land and real estate upon which the assessments are laid, and after such view shall notify all parties in interest of the time they will hear testimony in relation to the matters referred to them; and, after hearing all parties and witnesses, and taking into consideration all taxes, assessments and impositions, of every nature whatsoever, and of the value of the land and real estate in proportion to the taxes and assessments against the same, shall proceed to fix and adjust a specific sum or amount to be paid by the owner or mortgagee in full settlement and discharge of the tax or taxes, assessment or assessments levied or

imposed by any public road board upon the real estate described in the petition under which the arbitrators are appointed. This legislation must be read in connection with the provisions of the Road Board act prescribing the principle upon which said assessments and impositions were to be made. That act prescribes that assessments shall be made in proportion to and not in excess of the benefits conferred by the improvement.

We have, then, a commission whose duty it is to ascertain and fix what sum the land-owner shall pay in discharge of assessments upon his land, which ought originally to have been laid according to benefits. It must be presumed that the legislature intended that the review should be conducted in conformity with this established legal rule, and not in an arbitrary manner.

The act authorizes "the compromise or settling by arbitration of any assessment made by the road board." Arbitrators must regard the legal rights of parties. The right of the road board is to levy and collect the assessments in proportion to benefits. The right of the land-owner is to have the imposed burden limited in extent to the resulting benefit.

Thus considered, it is indicated with sufficient clearness that the arbitrators are to make a just estimate in proportion to the benefits conferred. That rule is still dominant and is to be the guide. They are to view the lands of the petitioner, to consider their value, and the aggregate of all the assessments against them, and thus they will be enabled to say, and they must say, what sum represents the burden which may be legally imposed according to benefits conferred. Those who made the assessments originally, estimated what they supposed would prove to be the resulting benefits. Imperfection in human judgment has doubtless led to erroneous conclusions. These arbitrators should do what experience will show the first assessors should have done. They will have the benefit of hindsight, which is always better than foresight.

I think the law will bear this interpretation, and it should be adopted because it supports the action of the legislature in

this respect. In this view of the act its effect and scope is to give an appeal to the land-owner in a case where the judgment against him would otherwise be final. Restoration to the injured party, by the judgment of the tribunal established by this law, of the sum taken from him in excess of the benefits conferred, cannot constitute an illegal taking of property from the road board. . In such legislation there is no infirmity.

Is the act retrospective as regards property sold before it was passed? The act applies in terms to "any assessment or assessments that may have been or may hereafter be laid or imposed;" and the proviso of the third section is this: "Provided, however, that the provisions of this act shall not apply to cases where the land and real estate have been sold for assessment, and bought therefor by a *bona fide* purchaser other than such public road board or its representatives."

This language clearly gives the act a retrospective effect. The exclusion from its operation of those cases where lands are sold to others than the road board, involves the inclusion of purchases made by the said board.

Is the mortgagee who has bought the property covered by his mortgage entitled to apply under the provisions of the act? The first section of the act provides that it shall be lawful for the road board to adjust and compromise any assessment that may have been or may thereafter be laid by virtue of the powers conferred on said road board, with the owner or mortgagee of lands which may have been or may thereafter be assessed for benefits.

The second section provides that in case of an application by any owner or mortgagee for adjustment and compromise, and of failure of agreement between the road board and applicant, the said owner or mortgagee may apply for the appointment of arbitrators.

If the act relates to the time when the assessment was laid, the relator was mortgagee; if it refers to the time when application was made, he was owner. In either case he is entitled to the benefit of this legislation.

It is suggested that under the foreclosure proceedings the

mortgagee purchased the land *cum onere*, and that if the assessment is now diminished, he gains an unfair advantage. What proportion of the mortgage debt the land subject to the assessment is of sufficient value to satisfy, this court cannot make a subject of inquiry. It must be considered, however, that the mortgagee purchased the premises with the knowledge which all persons are presumed to have had, that he had a right to apply, under the act of 1882, for relief from the imposition in so far as it was excessive. In that view of the case, the probability that the assessment would be reduced would tend to increase the sum bid for the property at the mortgage sale.

There is manifest justice in preserving the rights of the mortgagee over whose mortgage an assessment for benefits subsequent in time is advanced in order of priority. This question is answered affirmatively.

What considerations are to guide the judge in deciding whether it is a proper case for arbitration remain to be answered.

The act requires the owner or mortgagee to give notice to the road board of his intended application. When the application is presented it is made the duty of the judge to determine whether it is a proper case for arbitration. That duty cannot be intelligently discharged without the presentation to him of such facts, duly verified, as will show that the petitioner is entitled to relief. It must therefore be implied that the burden falls on the applicant to bring such facts to the consideration of the judge as will enable him to exercise a discretion. The object of the act is to give relief to the petitioner from an assessment in excess of the benefits conferred upon him. The review which he institutes by his application is for his exclusive benefit, and does not affect the prior proceedings so far as they relate to others. The sole question will be whether he is burdened in excess of his benefits. To entitle him to a review he must make a *prima facie* case to that effect.