CONSTITUTIONAL LAW—CONTRACTS—CORPORATIONS—ME= CHANICS' LIENS.

[Lucas (6th) Circuit Court, 1907.]

Haynes, Parker and Wildman, JJ.

JAMES A. STEWART v. J. N. GARDNER ET AL.

1. INALIENABLE RIGHT TO CONTRACT APPLIES TO CORPORATIONS.
   The inalienable right to acquire property involves the right to make contracts with reference to property and that right appertains not only to individuals but also to private corporations and to municipalities. And applying the holdings of the Supreme Court in *Palmer v. Tingle*, 55 Ohio St. 423, and *Cleveland v. Construction Co.* 67 Ohio St. 197, the legislature has no more right to alienate or qualify the power of a private corporation to contract than it has an individual.

[For other cases in point, see 2 Cyc. Dig., "Constitutional Law," §§ 341-367; "Contracts," §§ 1232, 3210-3216; 6 Cyc. Dig., "Mechanics' Liens," §§ 5-16.—Ed.]

2. REVISED STATUTES 3231-1 (LAN. 5135) UNCONSTITUTIONAL.
   Revised Statutes 3231-1 (Lan. 5135) relating to liens for labor and material furnished certain public works, etc., is applying the principles and on the authority of *Palmer v. Tingle*, 55 Ohio St. 423 and *Cleveland v. Construction Co.* 67 Ohio St. 197, unconstitutional.

[For other cases in point, see 6 Cyc. Dig., "Mechanics' Liens," §§ 5-16.—Ed.]

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

**Malcolm McAvoy** and **A. S. Brumback,** for plaintiff in error.

**L. W. Morgan,** for defendant in error.

**L. P. Conway,** for cross petitioner, P. F. Sullivan.

Stewart v. Gardner.

**WILDMAN, J.**

This is a proceeding in error to reverse the judgment of the court of common pleas. The issues arise upon the claims of James A. Stewart and P. F. Sullivan, a cross petitioner, of alleged liens against the property of the Cincinnati, Toledo & Detroit Short Line Ry. Co., for services rendered to principal contractors. Certain work was to be done for the company, and J. N. Gardner, at first, and subsequently the Gardner company, were the principal contractors. The services of Stewart were rendered to the one and those of Sullivan to the other contractor. The claims of the plaintiff and the cross petitioner, P. F. Sullivan, are based upon Rev. Stat. 3231-1 (Lan. 5135). It provides, in substance, and so far as it is necessary to recite any of its provisions, that:

"Any person who shall have performed common or mechanical labor upon, or furnished supplies to, any railroad, * * * turnpike, plank road, canal or on any public structure being erected, or on any abutment, pier, culvert, or foundation for same, or for any side track, embankment, excavation or any public work, protection, ballasting, delivering or placing ties, or track-laying, * * * shall have a * * * lien on the whole of the property on which said work is done," etc., whether the labor is performed for, or the supplies and material furnished to, the company itself or to any contractor or subcontractor. The court below held this section to be unconstitutional, and, in so holding, disposed of the claims of the plaintiff and the cross petitioner named. It is hardly worth while to enter upon what might be a very interesting discussion of the various provisions embodied in this section, in view of the adjudications already had in our court of last resort as to statutes so analogous as to be, in our judgment, determinative of the question involved here. The sole issue presented for our determination involves directly the constitutionality of this section. There is a decided conflict in the authorities as to the legislative power to qualify the right of individuals or corporations to enter into contracts. The case relied upon by counsel for the defendant in error and followed by the court below, is *Palmer* v. *Tingle*, 55 Ohio St. 423 [45 N. E. Rep. 313]. The court in that case held:

"1. The inalienable right of enjoying liberty and acquiring property, guaranteed by the first section of the bill of rights of the constitution, embraces the right to be free in the enjoyment of our faculties, subject only to such restraints, as are necessary for the common welfare.

"2. Liberty to acquire property by contract, can be restrained by the general assembly only so far as such restraint is for the common welfare and equal protection and benefit of the people, and such re-

straining statute must be of such a character that a court may see that it is for such general welfare, protection and benefit. The judgment of the general assembly in such cases is not conclusive.

"3. While a valid statute regulating contracts is, by its own force, read into, and made a part of, such contracts, it is otherwise as to invalid statutes.

"4. The act of April 13, 1894, 91 O. L. 135 [Rev. Stat. 3184; Lan. 5100], in so far as it gives a lien on the property of the owner to subcontractors, laborers and those who furnish machinery, material or tile to the contractor, is unconstitutional and void. All to whom the contractor becomes indebted in the performance of his contract, are bound by the terms of the contract between him and the owner."

This would seem to dispose of the question of the validity of the section under consideration so far as the view entertained by our Supreme Court is concerned, except for the contention of plaintiff in error —that the decision of the Supreme Court in the case just cited does not reach so far as to apply the rule enunciated to corporations. It is earnestly, and with much force, urged that that legislative power which gives life to the corporation and has power to take it away, may at any time by legislative enactment restrict the powers of the corporation so by the legislative act created. Indeed, it is asserted in general terms that a corporation has no inalienable right to contract; and it might by force of the same reasoning, be insisted that a corporation has no inalienable right at all; that all its rights are subject to be divested by acts of the legislature; that it cannot claim even the right to exist; and that it must, at any time, at the legislative behest, surrender its life. The act which the Supreme Court held to be invalid was, it is true, an act which did not, in terms, especially relate to corporations, and one of the cases under consideration by the Supreme Court affects only the rights of individuals. The other case had for one of its parties a corporation, but it was not the power of that corporation to contract that was being considered.

In the act now under consideration we have a provision which relates especially to corporations, although not necessarily entirely so. It evidently refers mainly to structures and improvements made by railway companies, but it also relates to public structures of all kinds. Incidentally, some consideration has been given, in argument, to the provision in this section for its enforcement—for the foreclosure of the lien or for the collection of the debt sought to be secured by the lien, and no attorney in the case contends for any validity to the section so far as its remedial part is concerned, or, rather, as to the enforcement

Stewart v. Gardner.

of its remedy. It is provided, in substance, that the entire operation of the railway—if it be a railway—no matter what its length, no matter what the extent of its business, may be tied up by injunction until the claim of the lien holder, no matter how small or insignificant, shall have been adjusted and paid. This is "government by injunction" with a vengeance, and, as I say, no attorney in the case contends that a provision such as that will stand under the law. But, it is urged that this part of the statute may be eliminated from it without emasculating the statute—that the statute so far as concerns the establishing of a lien may still exist and the lien holder may have recourse to a court of equity in proper proceedings for its enforcement.

The decision of our Supreme Court, *supra,* has been subjected to sharp criticism, and the reasoning, so far as we are apprised, does not appear to have been followed, to any extent, outside of Ohio. It is urged upon us that we should not enlarge this decision—go any farther along the line which has been followed by our Supreme Court. The reasoning of the judge who announced the opinion upon which the decision is based may not bear critical investigation. If the decision stood alone, in view of our notions of this class of legislation, it is altogether likely that we might adopt the suggestion of counsel, and, following the Supreme Court no farther than was necessary, hold that, while under our bill of rights men have an inalienable right to contract, artificial persons have not. But this case does not stand alone as an expression of the views of our court of last resort, and notwithstanding the high authority of the Supreme Court of the United States, and the circuit court of appeals, whose decisions have been cited to us as in conflict to some extent, with the case of *Palmer* v. *Tingle, supra,* we feel bound to follow the authority of the Supreme Court of Ohio as to Ohio statutes, and the application of the bill of rights embodied in our Ohio constitution. It is not a question affecting the validity of an act of congress, nor is it one in which a question has been presented of claimed violation of the federal constitution, but the case relates solely to the Ohio jurisdiction; and in such cases, we have uniformly held the decisions of our own Supreme Court to be binding upon us, leaving that court to revise and reverse its own conclusions at any time when it may deem that it has gone wrong.

In the case of *Cleveland* v. *Construction Co.* 67 Ohio St. 197 [65 N. E. Rep. 885; 59 L. R. A. 775; 93 Am. St. Rep. 670], the Supreme Court has, in effect, refused to adopt the contention of counsel for plaintiff in error here—that the principle of an inalienable right

Lucas County.

to contract, even if applied to individuals, will not apply to corporations. I read a part of the syllabus: ·

"1. The act of April 16, 1900, 94 O. L. 357 [Lan. Rev. Stat. 7306 et seq.; B. 4364-62a et seq., entitled: An act to provide for limiting the hours of daily service of laborers, workmen and mechanics employed upon public work, or of work done for the state of Ohio, or any political subdivision thereof, providing for the insertion of certain stipulations in contracts of public works; imposing penalties for violations of the provisions of this act, and providing for the enforcement thereof, is in conflict with Secs. 1 and 19 of Art. 1 of the constitution of Ohio; because it violates and abridges the right of parties to contract as to the number of hours of labor that shall constitute a day's work, and invades and violates the right, both of liberty and property, in that it denies to municipalities and to contractors and subcontractors the ·right to agree with their employes upon the terms and conditions of their contracts. Said act is therefore unconstitutional and void."

It is held, also, that the act is not a valid exercise of the police power, thereby disposing of one of the questions urged upon us and based largely upon the case of Branin v. Railway, 31 Vt. 214. It will be noted that here we have a municipality which is not only a political subdivision of the state, but is also a corporation having certain property and business rights, a corporation representing a large number of individuals, just as a private corporation does, and, when we leave out of consideration its governmental powers, standing towards its citizens very much as a private corporation stands towards its shareholders.

In the entire argument of the questions in Cleveland v. Construction Co. supra, it seems to have been assumed that the legislature had no power to restrict the right of private corporations as to contracts or as to fixing the hours of labor of their employes; but the question under consideration was mainly whether the legislature could enact legislation restricting the right of municipalities so to contract or fix the hours of labor. The legislature had attempted to fix a limit to the hours of labor, just as in previous enactments it had fixed the rate of interest beyond which contracting parties were not permitted to go. It has seemed to the members of the present court who have con-sidered this question, a matter of some difficulty to distinguish between that spirit of paternalism by which the legislative body of a state attempts to protect the ignorant or improvident against the adroitness and skill of the educated or experienced in the matter of usury laws, and the kind of legislation which we are here considering in which the

Stewart v. Gardner.

legislature has sought to protect workmen who may be ignorant of the laws of business and not accustomed to making contracts, as against the shrewdness and the skill of employers. But the Supreme Court has attempted to draw such a distinction and has held that even in the case of municipal bodies a legislative provision that they shall not make contracts with employes for work days of more than eight hours, is invalid because of its attempted restriction of the power of the contracting parties, including the municipalities themselves, to enter into such contracts.

On page 213, Judge Crew, who announces the opinion of the court, quotes approvingly this language from the case of *People* v. *Coler*, 166 N. Y. 1 [59 N. E. Rep. 716; 52 L. R. A. 814; 82 Am. St. Rep. 605]:

"The city is a corporation possessing all the powers of corporations generally and cannot be deprived of its property without its consent or due process of law any more than a private corporation can."

And on page 215 he quotes from the case of *Atkins* v. *Randolph* (*Town*), 31 Vt. 226, 237, this language:

"It is true, as was urged in argument by the learned counsel for plaintiffs, that in some respects, the legislature have a power in respect to municipal corporations, that they have not in respect to private corporations or individuals. They may alter or abolish municipal corporations at pleasure, but, yet, not so as to defeat the pecuniary rights of individuals, as against such corporations, or as depending upon their existence. The legislature have the same power in respect to private corporations, when that power is reserved in the law creating them. So far as a municipal corporation is endowed by law with the power of contracting, and as such, is made capable of acquiring, holding and disposing of property, and subject to the liabilities incident to the exercise of such power and capacity, thus being invested with legal rights as to property and contracts, and made subject to legal liabilities in respect thereto, to be ascertained and enforced by suit in the ordinary judicial forums, upon the same principles, and by the same means as in case of a private corporation, such municipal corporation must stand on the same ground of exemptions from legislative control and interference as a private corporation. As to third persons who seek to enforce pecuniary liabilities against towns, arising upon contract, such towns are merely private corporations or individuals, and in this respect, they are not affected by the purely municipal public and political features that appertain to their corporate existence in virtue of, and in reference to which alone, they are subject to the absolute control of legislation."

Judge Crew cites to the same effect the case of *People* v. *Detroit* (*Com. Counc.*) 28 Mich. 228, and adds:

Lucas County.

"This distinction as to the powers delegated to municipal corporations was clearly recognized and commented upon by this court in the case of *Western College* v. *Cleveland*, 12 Ohio St. 375."

I need not follow his elaboration of this distinction, which has become quite familiar to the bench and bar of this state, the distinction between governmental powers and the proprietary and business powers of a municipality. The language which I have read I have selected because of its manifest treatment of municipal corporations as upon the same plane as private corporations and its treatment of private corporations in the same paragraph as upon the same plane as individuals, so far as regards the legislative lack of right to alienate or qualify the power of such individuals or private corporations or municipalities to contract. In the case of *Cleveland* (*City*) v. *Construction Co.*, supra, Judge Crew cites, as bearing more or less directly upon the questions in it considered, numerous cases, and among them—*State* v. *Iron Co.* 51 Ohio St. 632; see, also, memorandum note reported in 33 Bull. 6 (1 O. S. C. D. 254), which shows it to be a case involving the right of a private corporation to enter into contracts and the lack of power in the legislature to interfere with the exercise of that power.

In the case of *Palmer* v. *Tingle*, supra, Judge Burket, in his opinion, on pages 441-442, refers to this same unreported case of *State* v. *Iron Co.* supra, as follows:

"Many other like cases of restraint as to contracts are to be found in our statutes, but all of them, in so far as they are valid, depend for their validity upon the same principle. It was the infringement of the liberty of contract that induced this court in *State* v. *Lake Erie Iron Co.*, unreported, to hold the statute unconstitutional which required corporations to pay their employes at least twice in each month."

We have, then, the very definite expression by our Supreme Court that the inalienable right to acquire property involves the right to make contracts with reference to property and that that right pertains not only to individuals but also to private corporations and to municipalities. The federal courts and the courts of many of the states, with very forcible reasoning, have adopted the contrary view. We feel bound, however, to follow the decisions of our own Supreme Court.

I wish to add, before dismissing the case entirely from our thought, that the statute which is involved in the present inquiry is no more a statute affecting corporations exclusively, or their right to contract, than was the statute considered by the court in *Palmer* v. *Tingle*, supra. That was an act as to liens generally, acquired by persons contracting with subcontractors, and so is this, although it may pertain to certain

Stewart v. Gardner.

kinds of structures and improvements not contemplated by the act with regard to which the Supreme Court has adjudicated this question. So far as their affecting corporations and individuals alike is concerned, the two statutes are practically upon the same footing.

The judgment of the court below is affirmed.

**Haynes** and **Parker, JJ.,** concur.