THE TOWN OF MONTPELIER, CORNELIUS W. BANCROFT, CHARLES REED, AND ARTEMAS W. WILDER, *v.* THE TOWN OF EAST MONTPELIER, EDSON SLAYTON, TRUMAN KELTON, AND DAVID R. GRAY.

[ IN CHANCERY. ]

*Right of the legislature to alter and abolish towns. Act dividing the town of Montpelier. Trusts.*

The legislature may alter and abolish municipal corporations, and divide or dispose of the property held by them for municipal purposes; and their right in this respect is not defeated or affected by the circumstance that the town or other municipal corporation is by its charter made the trustee of a charity.

The act of the legislature dividing the town of Montpelier, (*Laws of* 1848, *p.* 5,) held constitutional and valid; and the construction given to it in *Montpelier* v. *East Montpelier*, 27 Vt. 704, approved and adopted.

That act having abolished the old town of Montpelier, which was, by its charter, the trustee of certain rights of land reserved for public uses, the court of chancery was directed to appoint a new trustee to take charge of the property and execute the trust for the benefit of the inhabitants of the territory which comprised the original township.

APPEAL FROM THE COURT OF CHANCERY. The bill was brought by the town of Montpelier and its selectmen, in behalf of themselves and the other inhabitants of said town, against the town

of East Montpelier and its selectmen, as properly representing the interests of all the inhabitants of that town.

The bill alleged substantially as follows, viz: that the state of Vermont, on the 21st of October, 1780, incorporated and granted a township by the name of Montpelier; and that on the 14th of August, 1781, a charter of said township was issued, and that the said state, by their grant and charter, among the public rights of land reserved, did reserve, grant and appropriate "lands to the amount of one right to be and remain for the settlement of a minister or ministers of the Gospel in said township; and lands to the amount of one right for the support of the social worship of God in said township; and lands to the amount of one right for the support of an English school or schools in said township;" and that the said grant and charter empowered the proprietors of said township to locate said rights; and provided that said rights when located "shall, together with the improvements, rights, rents, profits, dues and interests, remain inalienably appropriated to the uses and purposes for which they are respectively assigned, and be under the charge, direction and disposal of the inhabitants of said township forever;" that the town of Montpelier was duly organized under said charter, and that the said public rights were rented and leased by said town, and the rents thereof collected and expended according to the provisions of law and the purposes of said public rights, until the division of the town of Montpelier.

The bill further alleged that the legislature of this state, at their annual session in 1848, passed an act entitled "*an act to divide the town of Montpelier,*" approved *November* 9, 1848, which divided and incorporated the territory of the said town of Montpelier into two distinct towns, one called by the name of Montpelier and one by the name of East Montpelier, and dissolved and destroyed the corporation of the old town of Montpelier; that the corporation of the old town of Montpelier held their title under said charter to the said public rights of land and to the rents and profits thereof as trustees for the use of the inhabitants of the territory embraced in the original charter; and that the legislature in dissolving said corporation made no provision for any person or persons to take charge of said public rights and collect and expend said rents and profits for the use of the inhabitants of the old town of Montpelier.

The bill further slated that nearly all of said public rights were located in the territory which constitutes the present town of East Montpelier, the inhabitants of which claimed that all of said public rights lying within the present territory of said town, and the rents thereof, belonged by law and right to said town and the inhabitants thereof, and that said town of East Montpelier had collected in pursuance of said claim, and expended for the benefit of the inhabitants of said East Montpelier, most of the rents accruing from the public rights lying in that town, and had wholly excluded the present town of Montpelier and the inhabitants thereof from any use of, and benefits from said public rights lying within the territory of East Montpelier; that the present town of Montpelier contained about six thousand acres of territory, and East Montpelier about seventeen thousand acres, and that at the time of the division aforesaid the new town of Montpelier contained two thousand two hundred and forty-two inhabitants, and East Montpelier one thousand four hundred and thirty-one inhabitants, and that in 1848 the grand list of the present town of Montpelier was seven thousand one hundred and eighty-seven dollars and seventy-eight cents, and that of East Montpelier four thousand six hundred and fifty-nine dollars and forty-seven cents.

The prayer of the bill was that the town of East Montpelier might be perpetually enjoined from further collecting or receiving said rents, or interfering with said public rights; that a trustee might be appointed, who should be authorized to take charge of, manage and control said lands and rents; that said town of East Montpelier be decreed to pay over to said trustee all of the rents collected by said town; and that the rule of appropriating said trust fund for the objects designated by said charter, might be determined by the decree of said court of chancery.

To this bill the defendants demurred; and the court of chancery, at the September Term, 1855, sustained the demurrer and dismissed the bill, from which decree of dismissal the orators appealed.

*Heaton & Reed* and *T. P. Redfield* for the orators.

1. The right of the legislature to establish, alter, or abolish municipal corporations, is a principle inherent in the nature of the institutions themselves. They must yield to those public interests

and those public exigencies which they were created to subserve. *Bristol* v. *New Chester,* 3 N. H., 532 ; 3 Story's Com. on Con. 260, 361 ; Ang^l & Ames on Cor. secs. 30, 31, and cases cited, 767 ; 2 Kent's Com. 305 ; *The People* v. *Morrell,* 21 Wend. 563, p. 579 ; *The People* v. *Wren,* 4 Scammon, 273 ; *City of St. Louis* v. *Russell,* 9 Missouri, 507 ; *Montpelier* v. *East Montpelier,* 27 Vt. 706 ; *The People* v. *Morris,* 13 Wend. 331, 337 ; 1 Greenl. Ev. sec.·331 ; *Thorpe* v. *R. & B. R. Co.,* 27 Vt. 140, 142–3.

2. The legal effect of this charter was an irrevocable grant of these public rights. It created the corporation of the old town of Montpelier a trustee for the inhabitants embraced in its territory forever. *Bush* v. *Whitney,* 1 D. Chipman, 369 ; *Lampson* v. *New Haven,* 2 Vt. 14 ; *Poultney* v. *Wells,* 1 Aiken 180 ; *Cal. Co. Gram. School* v. *Burt,* 11 Vt. 632 ; *Goddard* v. *Williams,* 8 Vt. 492 ; *Montpelier* v. *East Montpelier,* 27 Vt. 704 ; *Pawlet* v. *Clark,* 9 Cranch 292, 419 ; *Tenett et als.* v. *Taylor et als.,* 9 Cranch 43, 262 ; *Dart. Coll.* v. *Woodward,* 4 Wheat. 518, 697–8. And there has been a perfect extinguishment of this trustee by the Legislature in passing "an act to divide the town of ·Montpelier." Laws of Vermont, 1848, p. 5 ; *Montpelier* v. *East Montpelier, ub sup.*

3. The legislature cannot now change or interfere with the the terms of the original grant and appoint a new trustee. Dart. College case, 4 Wheat. 518 ; *Commonwealth* v. *Cullen et als.,* 1 Harris 133 ; *Brown* v *Humnaell,* 6 Barr 86 ; *Trustees of New Gloucester School Fund* v. *Bradbury,* 2 Fairf. 118 ; *Montpelier* v. *East Montpelier, ub sup.,* Bennett J.; *Trustees of Aberdeen Female Academy* v. *Mayor and Aldermen of Aberdeen,* 13 Smedes & Marsh 645, 646–7–8 ; *Sage and others* v. *Dillard and others,* 15 Kentucky 340.

4. A court of chancery will sustain and protect a dedication of property to public uses. Angel & Ames on Cor. sec. 181–2, and cases cited ; *Executors of Burr* v. *Smith,* 7 Vt. 241. This is a charitable trust, over which equity has exercised its jurisdiction from the earliest history of the court of chancery. Adam's Eq. 190–1; Story's Eq. 408; 7 Vt. 241, *supra; Vidal et als.* v. *Girard's Executors,* 2 How. 127, 191–2. That jurisdiction reaches municipal corporations. Adam's Eq. 192, n. o. and cases cited ; 2

How. 127, *supra.*    And charitable trusts are never allowed to become extinct.  2 Story's Eq. 413.

5. This, then, is but a case, not unusual, of an application to chancery rendered necessary by the failure of a trustee.  The *cestui qui trust,* the inhabitants of the original territory have no other remedy than the appointment of a trustee by this court.

A court of equity never wants a trustee, and will always execute a trust failing by the death of the trustee, or by accident.  1 Story's Eq. sec. 98, 2 *id.* sec. 976 ; Adams' Eq. 145–6, and cases cited in note 1 ; 4 Kent's Com. 343–4; *Brown* v. *Higgs,* 8 Ves. 561; *Moggridge* v. *Thackwell,* 1 Ves. Jr. 475 n. 4; *Bax* v. *Whitney,* 16 Ves. 26 and notes ; *Mc Carter* v. *Orphan Asylum,* 9 Cow. 484–5.

*Peck & Colby* and *J. A. Wing* for the defendants.

1. The legislature cannot destroy a municipal corporation created merely for municipal purposes, without its consent.    *Waldron* v. *Lee,* 5 Pick. 323 ; *Mayor and Commonalty of Colchester* v. ――, 3 Burrows 1866 ; *King* v. *Avery* and *King* v. *Mack,* 2 Term 515; *King* v. *Pesman,* 3 Term 200 ; Angel & Ames on Corp. sec. 767, and cases cited ; *Dartmouth College* v. *Woodward,* 4 Wheat. 518 ; *Fletcher* v. *Peck,* 6 Cranch 87 ; *Tyrall et al.* v. *Taylor et al.,* 9 Cranch 43 ; *Wells* v. *Stitson,* 2 Mass. 143.

2. But if a *mere* municipal corporation can be destroyed by the legislature, the town of Montpelier was by its charter something more.   It was a contract between the state and the corporators named in it, which the legislature could not revoke without the consent of the corporators or their grantees.  *Dart. College* v. *Woodward,* 4 Wheat. 663 ; 2 Kent's Com. 305–6 ; *Trustees of Aberdeen Female Academy* v. *Mayor and Aldermen of Aberdeen,* 13 Sm. & Marsh 645; *Fletcher* v. *Peck,* 6 Cranch 87; *Poultney* v. *Wells,* 1 Aiken 180 ; *Trustees, &c.,* v. *Bradbury,* 2 Fairf. 118 ; *Commonwealth* v. *Culver et al.,* 1 Harris 133 ; *Plymouth* v. *Jackson,* 15 Penn. 44; *Norris* v. *Trustees of Arlington Academy,* 7 Gil. & John. 7.

The act of 1848 was therefore void, if it destroyed the old town of Montpelier, and removed, or increased, or diminished the number of the trustees of the public fund, or removed the fund from

the care and control of those to whom it was entrusted by the charter of the town.  The complainants proceed upon the ground that the old corporation is destroyed, and this position failing them, their bill must be dismissed.

3.  If the act of 1848 was valid, its only effect was to change the name of Montpelier to East Montpelier. and then create a new town by the name of Montpelier, containing about five thousand acres, and leaving seventeen thousand acres in the old town.   To say that East Montpelier was set off from Montpelier would be like saying that a man was cut off from his head or leg.

The fifth section of the act speaks of the town of Montpelier " hereby created."

The town cut off had no right to any part of the funds of the town from which it was separated. *Brunswick* v. *Denning*, 7 Mass. 444 ; *County of Hopkins* v. *County of Franklin*, 16 Mass. 75 ; *Windham* v. *Portland*, 4 Mass. 584 ; *Richards* v. *Daggett*, 4 Mass. 534; *Brewster* v. *Hardwick*, 4 Mass. 278 ; ———— v. *Hamilton*, 4 Mass. 676 ; *Westford* v. *Dartmouth*, 10 Mass 341 ; *Great Barrington* v. *Lancaster*, 14 Mass. 253 ; *Norton* v. *Mansfield*, 16 Mass. 48 ; *Bridgewater* v. *West Bridgewater*, 9 Pick. 55 ; *Randolph* v. *Braintree*, 9 Mass. 315 ; *Harrison* v. *Brighton*, 16 Mass. 16 ; *North Hempsted* v. *Hempsted*, Hopk. 288 ; *Bristol* v. *New Chester*, 3 N. H. 524.

The opinion of the court was delivered by

Isham, J.   The general question arises in this case, whether the plaintiffs are entitled, upon the facts admitted by the demurrer, to the relief prayed for in their bill.   In a former case between these parties, 27 Vt. 704, involving the subject matter now in controversy, it was held that the plaintiffs had not that legal interest in the money for which the suit was brought, which would enable them to sustain the action of assumpsit.   This bill is now brought in behalf of the inhabitants of Montpelier, for the purpose of having the money in the hands of the defendants appropriated as directed in the original charter of the town, and for the appointment of a trustee to collect, manage and control the trust fund and estate, as directed by the charter.   The town of Montpelier was originally chartered in 1781, by which charter the territory therein described

3

was incorporated into a township by that name, and its inhabitants were invested with all the rights and immunities which belong to the inhabitants of other towns in this state. It is admitted by the demurrer, and it also appears from the charter, that among other public rights, the state reserved, granted and appropriated three rights of land for the settlement and support of a minister or ministers and the social worship of God in that town, and also for the use and support of English schools in such places as shall best accommodate the inhabitants of that township; and when located by the proprietors, it is declared that " the lands, together with the improvements, rights, rents, profits, dues and interests shall remain inalienably appropriated to the uses and purposes for which they are respectfully assigned; and be under the charge, direction and disposal of the inhabitants of said township forever." There can be no doubt as to the legal construction which should be given to that charter. So far as these rights of land are concerned, the town of Montpelier, *as originally chartered and as a municipal corporation*, is invested with the legal title and interest to these lands in trust for the use and benefit of those who were, and should thereafter become inhabitants of the territory described in that charter. The town, as a municipal corporation, became the trustees of the grant, and the inhabitants of that territory the *cestui que trusts*, or persons beneficially interested; and the avails of those rights of land, when received by the town, are to be under the direction and disposal of its inhabitants, for the specific purposes mentioned in the charter. That construction was given to this grant in the case reported in 27 Vt., and that decision is regarded as a satisfactory exposition of the views now entertained on the several questions, which have arisen out of that charter and grant. The construction of that charter should obviously be the same in equity, as at law.

The town of Montpelier, as originally chartered, was invested with the powers of a municipal corporation, and like all other towns in this state, was instituted as an auxiliary of the state in the regulation and establishment of its form of government. The rights and franchises of such municipal corporations can never become *vested rights* as against the state. It was so held by Justice JOHNSON in *People* v. *Morris*, 13 Wend. 331, and Ch. KENT has

observed that "a public corporation is not a contract within the purview of the constitution, when instituted for purposes connected with the administration of the government." For that reason, so far as their public and municipal franchises and existence are concerned, it has become a well settled principle in the courts of this country, that the legislature may exercise over them exclusive control, and constitutionally may enlarge, restrain, and even destroy their municipal existence; as the public interests may require. Such an act defeats no vested rights, nor does it impair the obligation of any contract; *Memphis* v. *South Memphis*, 11 Humphrey 558. They have also under their control the disposition of its corporate property, or that which is held for municipal and corporate purposes. Hence, in the division of towns, where a part of one town is set off and incorporated into a new town, or annexed to another town, a division of its corporate property is generally made by the act making the division. But while this legislative power may be exercised over public and municipal corporations, it has as uniformly been held that towns, and other public corporations, may have private rights and interests vested in them under their charter; and as to those rights, they are to be regarded and protected the same as if they were the rights and interests of individuals, or of private corporations; and grants of property to them, in trust for other purposes than corporate and municipal use, are no more the subject of legislative control, than are the private and vested rights of individuals. It was upon this ground that it was held in the case from the 27 Vt., that the act of the legislature of this state dividing the original township of Montpelier, and from that territory incorporating the towns of Montpelier and East Montpelier, and dividing also the debts, choses in action, and property of the original township between those towns, in proportion to their grand lists, had no effect whatever upon these rights of land, nor upon the rents and profits arising from them. The statute constitutionally directed a division of the property held by the town of Montpelier under its original charter in their corporate and municipal capacity, and which was to be applied for municipal purposes, but it had no effect upon this property, held by them in trust for the specific purposes mentioned in the charter, and which was not designed for their use as a municipal corporation. These principles

are fully sustained in *Dartmouth College* v. *Woodward*, 4 Wheat. 663, 9, 8; *Memphis* v. *South Memphis*, 11 Humphrey 558; *Trustees of Aberdeen Academy* v. *The Mayor of Aberdeen*, 13 Smedes & Marshalls, 645; *Bailey* v. *Mayor of New York*, 3 Hill 541; *Harrison* v. *Bridgton*, 16 Mass. 16; Angel & Ames on Corp. sec. 767, and various other cases to which we were referred in the argument of the case.

The act of 1848 dividing the town of Montpelier as it was originally chartered, and thereupon incorporating two new towns, abolished its corporate and municipal existence. It has ordinarily been the course in this and other states, when a town has been divided, to set off a portion of its territory to another town, or to organize that part into a new town, leaving the town itself to exist under its charter, as if no division had been made, but with a diminished territory. In such case, unless some provision is otherwise made by the statute making the division, the former corporation retains all the property held by the town before its division, and is subject to all its obligations and duties. 4 Mass. 384, 539; 7 Mass. 441, 445; 16 Mass. 86. But in the division of the town of Montpelier a different course was pursued. In the case from the 27 Vt., in speaking of the division of the town under the act of 1848, it was observed that "from the peculiar and explicit language of the act, it is clear that it was the intention of the legislature to make two new and distinct corporations; and the effect of this, from necessity, must be to abolish the old municipality."

It was, upon that view of the case, held that the parties were without remedy at law. The new town of Montpelier was not the trustee of this property, and as a corporation they had no interest in the trust fund. These rights of land were not conveyed to them in trust, and therefore the suit could not be sustained by them at law. That the former township of Montpelier, to which this property belonged, and in which the legal title to these lands and the money arising from their use was vested, was abolished by the operation of that statute, we must therefore consider as having been settled in this state by that decision, and from which we are not now at liberty to depart; and on this demurrer, we are not to presume that the division was made without the consent of all interested in the matter. But the *beneficial interest and rights of*

*the inhabitants of Montpelier*, as it was originally chartered, remain unaffected, and as perfect as if no division had been made. The township of Montpelier being abolished by that act of the legislature, there is consequently no person, or body corporate in existence, in whom the legal title of this trust property is vested. The trust estate, and the persons beneficially interested remain, but there is no trustee or person in whom is vested the right to collect and receive the avails of that property, for the purposes to which they were appropriated. If, in ordinary cases, the state can abolish the corporate and municipal existence of a town, and from that territory establish two new towns, when it is deemed necessary, as auxiliary to the state in the regulation and establishment of its government, we think there can be no insuperable difficulty in the exercise of that power in this case, though it has the incidental effect to leave this trust estate and fund without the trustee as created by the charter. It is not the case, where individual trustees while living, are removed from their trust by an act of the legislature, nor where the number of the trustees is increased by the addition of others without the consent of parties interested. Such acts have been held invalid and unconstitutional. In such cases, the legislature can no more defeat the title of a trustee, or affect his right over the trust fund, than they can divert or destroy the fund itself. But this principle must not be regarded as depriving the state of their power to alter or abolish the municipal organization of towns, when it is deemed necessary for public interests. If a town was organized for the purpose of aiding the state in sustaining its form of government, the power must necessarily reside in the state to abolish that organization, when it ceases to have that effect. That power is inherent in every state; it is a part of its sovereignty, and the exercise of that right is necessary to establish and sustain its government. It is the greater right, to which all others are held subservient. It is not competent for a town, or any other mere municipal organization, which is made the trustee of such an estate or of any charity, to set up a vested right of that character as against the government, and thereby prevent the state from changing its political and municipal organization as the public interests may demand. If towns, by their charter or in any other way, are made trustees of such an estate for such purposes, their

right and title as such is held subject to be defeated, whenever the state shall deem it necessary to abolish their existence as a town, or as a municipal organization. This case, therefore, is one in which the trust estate and fund is in existence; the same as if the town had never been divided. The inhabitants of the territory of Montpelier, as it was originally chartered, are entitled to the use and disposal of that fund, as is provided in that charter; but there is in existence no trustee having the legal title to that estate, or to the avails arising from it. In such case, the relief should be granted for which this bill is brought.

It is a settled rule in equity that a trust shall not fail for want of a trustee. If a trustee has been named, who refuses to accept the trust, or has since deceased, or if from any other cause, there is a failure of a regular appointed trustee, a court of equity will take upon themselves the due execution of the trust, and if necessary will appoint other trustees to carry the trust into effect; *De Pestu* v. *Clendining*, 8 Paige 296; *Peter* v. *Beverly*, 10 Peters 532; 2 Story's Eq. Jur. secs. 976, 1059, 1061. As there is now no trustee who is authorized to take charge of these lands, or of the rents and profits arising from their use, we think the orators are entitled to the relief for which this bill is brought; and among the sources of relief therein mentioned, a trustee or trustees should be appointed by the chancellor, whose duty should be to take charge of this entire trust property, and hold the same subject to the direction and disposal of the inhabitants of the territory of the town of Montpelier as it was originally chartered, and for the purposes specified in that charter.

The decree of the chancellor, dismissing the bill, must be reversed, and the case remanded to the court of chancery with directions to appoint a trustee or trustees of that trust property, and appropriate the same as directed in the charter.