# H. H. HARWOOD *v.* VILLAGE OF WEST RANDOLPH.

*What damages are recoverable for the taking of water rights.*

1. The petitioner was the owner of certain large springs, the water from which ran in well defined courses across his lands. The petitionee too these, improved them and used all the water in connection with its water system. *Held*, that the petitioner was entitled by way of damages not merely to the value of the water to him as it ran, but also to the value of the springs for the purpose of improvement and development.

2. But what the springs would have possibly been worth for the purpose of supplying the petitionee itself and its inhabitants with water, had it constructed no system of its own, is not a proper basis for estimating the damages, the owner having contemplated but never actually undertaken such an enterprise.

This was an appeal by the petitioner from an award of damages to him for the taking of certain water rights. Heard upon the report of commissioners and exceptions thereto at the June term, 1890, Tyler, J., presiding. Judgment for the smaller sum named in the report. The petitioner excepts.

The petitioner was the owner of several large springs the water from which ran in well defined courses across his land and on to and across the lands of other persons. The petitionee took these springs, made the necessary excavations and constructions, and conducted all the water obtained from them into its large distribution reservoir. Before taking the springs, the petitionee purchased the riparian rights of all persons interested in the waters after they left the premises of the petitioner, and it claimed upon the assessment of damages that the petitioner was only entitled to such sum as his right to the water, as it flowed in its natural condition across his land, was worth to the petitioner. If this was the correct basis for estimating the damages, the com-

missioners awarded him $200; but if the petitioner had an interest in the springs beyond this, for the purpose of development and sale, then they awarded him $300 damages.

The petitioner introduced evidence tending to show that these springs were of very great value as furnishing the most feasible supply of water for the village of West Randolph, petitionee. With regard to this claim the commissioners reported:

" The petitioner also claimed that he, being the owner in fee of the land where the water from these three springs issued from the ground, had a property in the water and had a right to dispose of the same ; and had a right to apply to the legislature for a charter for the purpose of supplying the village of West Randolph with water, and that he could have disposed of his water rights taken by said village to said contemplated corporation for a much larger sum than we awarded him, and as a basis for the award of damages and as showing what the petitioner is entitled to receive, the petitioner introduced evidence of the cost of this system of water works to the village of West Randolph, which was about twenty-three thousand dollars, and also showed the annual income from the rentals of such water including the estimated value of the fire protection afforded by the various hydrants in different parts of the village. Upon this basis witnesses estimated the value of the water taken from the petitioner's land to be from three to five thousand dollars.

The petitioner in the year 1883, contemplated conveying water from these springs to the village of West Randolph, and had promise of aid to do so provided he could get one hundred persons to agree to take the water at ten dollars each. · A paper was drawn up for that purpose, but a sufficient number of names were not obtained and nothing was further done about it.

The petitioner had never applied for any charter for the purposes claimed, and it was a matter of doubt in the minds of many as to the success of the enterprise until after the works were constructed ; it is also a matter of conjecture whether the

village of West Randolph would have taken this water from a private corporation or not for fire purposes, and we think it more probable that said village would have supplied itself with water from other sources, provided it had not taken that of the petitioner. We are therefore of the opinion that the damages claimed upon this basis are purely of a speculative character, depending upon so many contingencies that it is impossible to tell whether or not said water rights taken from the petitioner have any value above what his farm and lands are damaged and for which we have awarded him damages, but if the court should otherwise decide the report can be re-committed for further findings."

*Wing & Fay* for the petitioner.

The petitioner had the right to dig and construct upon his own land for the purpose of increasing the flow from these springs, and to appropriate the increased flow. To this extent his ownership was of value. *Norton* v. *Valentine*, 14 Vt. 239 ; *Boynton* v. *Gilman*, 53 Vt. 17 ; *Lybe's Appeal*, 151 Am. Rep. 549; *Ulbricht* v. *Eufauly Water Co.*, 11 Am. St. Rep. 72 and note *Bloodgood* v. *Ayers*, 108 N. Y. 400 ; Gould on Waters, s. 280 *et seq ;* *Chatfield* v. *Wilson*, 28 Vt. 49 ; *Harwood* v. *Benton*, 32 Vt. 724.

The measure of damages in the case was the value of the property taken for any purpose to which it could be legitimately put. Gould on Waters, s. 251, p. 444; Cooley's Const. Lim. (4th Ed.) p. 708; *Hooker* v. *Montpelier & Wells River Rd. Co.*, 62 Vt. 47.

*J. D. Denison and N. L. Boyden* for the petitionee.

The petitioner had no absolute right to appropriate the water which flowed across and away from his lands, but only to its legitimate use; and the value of that use was the measure of his damages. Gould on Waters, s. 148 ; *Haut's Appeal*, 125 Penn. St. 211 ; Wash. Ease. pp. 269, 276, 286, 304;

Godd. Ease., pp. 6, 7, 56, 57, 64, 424, 425; Ang. Wat. ss. 135, 427, 432, 433, 449; *Newhall* v. *Ireson*, 8 Cush. 595; Gould Waters, 204; *Lord* v. *Meadville Water Co.*, 135 Pa. St. 122.

The conjecturable value of those springs for the purpose of supplying the village with water was properly disregarded by the commissioners. *Patten* v. *Northern Cent. Ry. Co.*, 33 Pa. St. 426; *Donland* v. *East Brandywine & W. Rd. Co.*, 46 Pa. St. 526; *Winona etc. Rd. Co.* v. *Waldron*, 11 Minn. 515; *Wilson* v. *Rockford etc. Rd. Co.*, 59 Ill. 273; *Tide-Water Canal Co.* v. *Seabrook*, 12 Rich. 504; *Searle* v. *Lackawanna B. Rd. Co.*, 33 Pa. St. 57.

TAFT, J. delivered the opinion of the court.

I. It does not appear that the commissioners adopted an erroneous rule in the assessment of damages. They were unable to tell whether the rights taken had any value above the damage to the petitioner's farm and lands; this damage was awarded him, and it does not appear but that it was all the damage to his farm and lands resulting from the taking of the water rights put to, and valued for, any use. Such is the inference from the report.

II. The extent of the petitioner's recovery depends upon whether he had any right in the waters taken, except for his own use and with no right to sell. The water now used by the petitionee is taken from four springs, the waters of which, at the time of taking, ran in open well defined channels across the petitioner's lands, into those below his, and these waters the petitioner could use for purposes of his own, and could sell unless to the detriment of the riparian owners below. If by artificial means he increased the flow of the springs he could sell such increase, if by such sale he did not lessen the natural flow from the springs. He had a right to the water that percolated through the soil of his lands, and the right to dig and develop springs, streams, and fountains, and the water thus obtained, he could

H. H. Harwood *v.* Village of West Randolph.

sell.    If by force of the proceedings the petitionee obtained only the right to the water that naturally flowed onto the lands below the petitioner's their claim might be urged with more effect; but they took much more, viz : "All the fountains, springs and streams and the water therefrom" on the petitioner's land, with "the right to go upon said pasture land and dig and develop fountains, springs, and streams and store and fit the same for use and dig ditches," etc.    It is unjust to say that waters thus obtained were not the absolute property of the petitioner.    He had the right to sell and dispose of them, and if he had, the commissioners find his damages to have been three hundred dollars, and we think he should have judgment for that sum with interest since the filing of the first award, March 4, 1887, and costs.    We do not understand that the commissioners assessed the damages upon the basis that the petitioner claimed that he had a right to sell all the water that flowed upon the lands below his, but in subordination to the rights of the lower riparian owners, while the petitionee claimed that he had the right to none except such as was necessary for his own use in connection with his own land and that it was upon this basis that the assessment of the different sums was made.

*Judgment reversed and judgment for the petitioner for $300.00 and interest since March 4, 1887, as damages, and costs.*