In re Appropriation of Easement for Highway Purposes over Property of Moores Lime Co.*

(No. 548—Decided March 11, 1958.)

*Mr. William Saxbe,* attorney general, *Mr. Hugh E. Kirkwood, Jr.,* and *Mr. Daniel S. Guy,* for appellant Director of Highways.

*Messrs. Cole & Cole,* for appellee Moores Lime Company.

CRAWFORD, J. The Director of Highways appeals on questions of law from a judgment entered upon a verdict fixing the

---

*Motion to certify the record overruled, October 8, 1958.

value of land taken and damages to residue on account of the construction and improvement of U. S. Route 40. Two errors are assigned.

The property taken consists of 6.99 acres, part of a tract referred to as 46.08 acres underlaid with dolomite-bearing rock which was being quarried and processed by the owner, Moores Lime Company, the appellee herein.

The resolution and finding of the Director of Highways, filed in accordance with Section 5519.01, Revised Code, was that the value of the property taken was $4,137.60 and the damages to the residue $65,707; the total deposit was $69,844.60.

Two expert witnesses called for the state gave their opinions that a fair total compensation was $14,544 and $15,000, respectively. The opinions of five expert witnesses for the appellee ranged from $149,580 to $340,000 for the value of the land taken, and from $853,966 to $1,760,000 as damages to the residue. The jury returned a verdict of $15,000 for the land taken and $150,000 damages to the residue.

The first assignment of error is that "the trial court erred in admitting the amount of the deposit found in the Director of Highway's resolution and finding into evidence."

A certified copy of the resolution and finding was introduced by appellee in rebuttal. When the director produced evidence so completely at variance with his resolution and finding, the latter took on the character of an admission against interest and became admissible as such.

It is contended that its admission violated the rule excluding evidence of offers to compromise legal controversies. That rule is based on the sound public policy that disputants and litigants should be encouraged to make peaceful and amicable efforts to settle legal controversies without prejudice or embarrassment. The rule would apply to all such efforts either before or after the filing of the resolution and finding.

But it cannot apply to the resolution and finding itself, which is a public record of the performance of an official duty. That duty is imposed by law, so that the customary inducements to free and voluntary compromise are unnecessary and inapplicable.

In so acting the director is not negotiating but, on the con-

trary, is declaring that he has been unable to negotiate the purchase of the property; and he is making a finding of value, presumably with due regard to the rights of both the landowner and the public. When he files his finding in court and makes the corresponding deposit he is starting litigation, not ending or attempting to end it.

The fact that the landowner has the option to accept or refuse the deposit as full compensation does not change the essential nature of the director's act.

If, after the issues are framed and the parties have become adverse litigants, the director attempts to prove a lower value than that previously fixed by him, the owner has every right under the settled rules of evidence to produce the resolution and finding to which the director, in the scope of his official duty, has previously committed himself. 31 Corpus Juris Secundum, 1134, Evidence, Section 359.

If the director testifies as a witness, such evidence would be in the nature of a prior inconsistent statement. If not, it is nevertheless an admission against interest.

It is contended that this is not proper rebuttal. The owner appealed from the finding because he considered it inadequate. Therefore, the finding appealed from is no part of his case in chief. But when the director attempted to prove a value vastly lower than his finding, the finding thereby took on the character of an admission against interest. It was therefore admissible upon rebuttal, that being the owner's first opportunity to offer it as such admission.

The record shows no effort by the director to correct, explain or justify the finding. Hence, we cannot consider the argument made in this court that the finding contained some mistake.

The second assignment of error is that the trial court erred in overruling the director's motion to strike from the record the testimony of Michael Brisch, one of the owner's expert witnesses who had testified to his opinion of the value of the property and the damages.

The witness had testified to his long experience in this special field, to his examination of this land and the equipment thereon and the circumstances surrounding these operations

and such operations generally. He gave his opinion as to the value of the land taken and the damages to the residue.

On cross-examination he stated that in reaching his conclusions he had considered the quality and extent of the dolomite-bearing rock, estimating the amount to be eleven million tons; and that he had placed thereon a value of twenty cents per ton, and had then multiplied the two figures; that this was part of the process of fixing the value of the whole property before the taking. At this point counsel for the director moved to strike all the witness's testimony. The motion was overruled.

In support of his contention that this is error, counsel for the director cited authorities holding that valuation cannot be fixed merely upon such calculation alone and that the supposedly unpredictable element of future profits is an unreliable basis for fixing value.

It must be observed that the witness had testified that before arriving at his conclusions he had taken into account various surrounding circumstances; that on direct examination his testimony was properly given upon the question of the value of the property as a whole; and that the testimony objected to regarding calculation was the witness's explanation, given in response to questions upon cross-examination, of a process which entered into his conclusions.

And in the general charge the court carefully and clearly explained the proper method to be followed by the jury.

When the motion was made to strike the witness's testimony, Judge Davis pointed out this important distinction: "The court can instruct the jury as to the rules that it shall apply and what they should consider in reaching their verdict, what they shall not consider; and the jury can then find. But the court cannot at any time instruct witnesses as to what reasoning they shall indulge in, in arriving at their conclusions as to the value of a piece of property."

Authorities cited by the director indicate the propriety of considering quantity and quality of mineral deposits as one element in determining valuation, so long as the finding is not predicated upon such facts alone. 4 Nichols on Eminent Domain (3 Ed.), 248, Section 13.22 [2]; 1 Orgel on Valuation under Eminent Domain (2 Ed.), 671, 672, Section 165.

The Supreme Court cases cited are in harmony with this principle. In the case of *Muskingum Watershed Conservancy District* v. *Funk*, 134 Ohio St., 302, 16 N. E. (2d), 454, the court approved a jury charge similar to the one given in this case. That case obviously involved evidence similar to that objected to here, for the charge there given contained the observation, "now there has been some evidence in this case in regard to value on sand, probably both as lying under the ground, as well as after it has been removed."

In the case of *In re Appropriation by Supt. of Public Works*, 155 Ohio St., 454, 99 N. E. (2d), 313, while the court declared inadmissible evidence of the profits of businesses operated on a property, it nevertheless clearly indicated the admissibility of evidence of the values and rentals of various houses standing thereon, and the propriety of taking such evidence into account, so long as the determination finally made by the jury was of the value of the property as a whole as distinguished from the mathematical sum of the values placed upon the separate houses.

The mathematical calculation of the witness in this case does not vitiate his testimony. When he arrived at his conclusion he stated that he would pay for the entire property the amount which he had thus found to be its value. It is difficult to imagine a qualified witness so committing himself without first having made some such careful analysis and calculation. And without careful and analytical consideration of the mineral content of the land, his opinion would be of little value.

No error prejudicial to the state appears in the record, and the judgment is, therefore, affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur