IN RE APPROPRIATION OF EASEMENTS FOR HIGHWAY PURPOSES.*

*Motion to certify the record overruled, May 20, 1959.

(No. 587—Decided December 2, 1958.)

*Mr. William Saxbe,* attorney general, *Mr. Willis E. Wolfe* and *Mr. James Stillwell,* for appellant.

*Messrs. Peterson, Neatherton & Peterson,* and *Messrs. Layton & Ritchie,* for appellees.

CRAWFORD, J.   The Director of Highways appeals on questions of law and fact a judgment of the Court of Common Pleas. Five assignments of error are noted.

Such a case is not appealable on questions of law and fact. Section 2501.02, Revised Code.   For this reason, appellees, property owners, moved to dismiss the appeal.   The motion was accordingly sustained at the time of argument by reducing the appeal to one on questions of law, and the case was heard and considered as such.   Section 2505.23, Revised Code.

Certain real estate is being taken for a perpetual highway easement in the improvement of state route No. 69, and includes some 3.723 acres out of a tract of 8.25 acres.   The portion being taken is a strip running roughly north and south through the central portion of the entire tract, leaving remnants on both sides.

The owners have been developing the tract as a housing project.   Upon the land taken were several houses and proposed houses in various stages of planning and construction.   On the remainder there were also completed houses which were being rented.   On the lands taken there were certain improvments, such as a reservoir, pumphouse and water lines, used in supplying water to the various houses from a spring located on the remaining land.

Assignments of error Nos. 1, 3 and 5 involve the same issue, arising upon (1) admission of evidence, (3) refusal to give an instruction requested by the director, and (5) the giving of a special instruction requested by the owners.

This issue concerns expert geological testimony that the

contemplated excavation for the highway would remove an exterior seal of soil and clay so as to release the water in a natural underground reservoir which gives rise to a spring, which, in turn, is the only available water supply for the houses.

There is some argument that this testimony is speculative. However, it is scientific, and unshaken by other testimony. In fact, the testimony of one of the director's witnesses, who describes himself as "supervisor of exploring, Bowser-Morner Testing Laboratories, Dayton, Ohio," and who made a study of this area, tends strongly to support the testimony of the owners' geologist. (This witness for the director proposed a method for saving the water despite the excavation, the efficacy of which method was disputed.)

It is contended that this situation is similar to the case of any adjacent landowners, each of whom is permitted by law to drill for water and otherwise improve his premises, even at the risk of impairing or even destroying his neighbors' wells or water supplies. Such principle is based partly upon the right of an owner to the free and lawful use of his own property and partly upon the practical impossibility in many cases of determining the course of underground waters percolating, oozing or filtrating through the earth. *Frazier* v. *Brown*, 12 Ohio St., 294; *Logan Gas Co.* v. *Glasgo*, 122 Ohio St., 126, 170 N. E., 874.

The Director of Highways is in an altogether different position from an ordinary adjacent owner and operates upon a different principle. There is no authority for an individual owner to take or occupy his neighbors' land, use it as he will and pay no compensation.

By the right of eminent domain which the people have granted in the Constitution, the government acquires an extraordinary right to take private property for public purposes, provided "a compensation therefor shall first be made in money, or first secured by a deposit of money." Section 19, Article I, Constitution, and see Sections 5519.01 to 5519.05, inclusive, Revised Code.

This requirement to pay compensation for damages is absolute. It was argued that the damage to the spring here involved was not foreseeable. This the owners denied, and offered evidence to disprove it. But be that as it may, there is no

authority for importing into such cases the rules of negligence. The owner's damage is equally real, whether or not it is foreseeable.

It may be observed that if, by reason of acutal unforeseeability, the state should be called upon to pay unexpectedly large damages, it may always exercise its option to decline to take, even after judgment. 19 Ohio Jurisprudence (2d), 697, Eminent Domain, Section 277; Section 2709.46, Revised Code. Engineering plans may sometimes be revised to meet such a situation. It would appear that a very slight revision here might resolve the entire question.

Of course, if it were a matter of mere speculation as to whether there was a causal relationship between the state's operations and the damages, or if possible future damages were merely speculative, the ordinary rules of law excluding them would apply. But it is our view that the evidence produced by the owners was sufficiently positive and definite in this case, if accepted by the jury, to support a finding of damages thereon.

It is suggested by the director that he ought not to be required to respond in damages for alleged injuries to the spring which is located outside the limits of the easement appropriated for the highway. In response to that argument the owners cite the case of *United States* v. *Alexander,* 148 U. S., 186, 37 L. Ed., 415, 13 S. Ct., 529.

Strictly speaking, the damage claimed is primarily to the natural reservoir which is directly breached or about to be breached by the excavation at a point within the right-of-way and only secondarily to the spring which opens upon the residue of the land.

But even if it were otherwise it has long been the law of Ohio that the compensation required by the Constitution includes not only the value of the property taken but also the amount of damage to the remaining property. 19 Ohio Jurisprudence (2d), 498, Eminent Domain, Section 90. See *Tennessee Gas Transmission Co.* v. *Wolfe,* 159 Ohio St., 391, 112 N. E. (2d), 376.

The second assignment of error concerns the admission of testimony as to rents theretofore received from the completed houses which are being served with the water from the spring as their only practical source of supply.

"Rental value" is one of the elements proper to be considered in fixing fair market value. It is difficult to see how "rental value" can be accurately gauged without evidence of actual rentals being received. *In re Appropriation by Supt. of Public Works,* 155 Ohio St., 454, 99 N. E. (2d), 313; *In re Appropriation for Highway Purposes,* 166 Ohio St., 249, 142 N. E. (2d), 219. Probably the only alternative would be opinion testimony. If, as indicated by the evidence, the rents testified to were received over a considerable period of time, that should furnish a reasonably reliable indication of rental value.

Of course, if the danger of manipulation for evidentiary purposes is so great as to overshadow the importance of the information thus supplied to the jury, that circumstance might be valid cause for excluding it. Such has been declared to be the case where there is a comparison of rentals before and after the taking. In view of the statutory provisions for speedy trial of these cases the subsequent rentals are likely to have been of short duration, and as some courts feel, subject to manipulation for purposes of trial. *Columbus, Hocking Valley & Toledo Ry. Co.* v. *Gardner,* 45 Ohio St. 309, 13 N. E., 69; *Powers* v. *Hazelton & Letonia Ry. Co.,* 33 Ohio St., 429; *In re Appropriation of Easement for Highway Purposes,* 93 Ohio App., 179.

But a prospective purchaser of rental property is certain to be interested in established rentals as evidence of value. The jury should not be deprived of similar assistance.

It would appear to be logical and consistent with the authorities to conclude that established rents may be shown in proof of rental value as one of the elements entering into determination of fair market value of the real estate whereas a comparison of rents received before the taking with those received or anticipated after the taking is too uncertain or too speculative to be acceptable in evidence.

The fifth assignment of error concerns the court's action in permitting the resolution and finding of the director to go to the jury. In the ordinary case it is discretionary with the court to permit pleadings to go to the jury under proper instructions. 39 Ohio Jurisprudence, 597, Trial, Section 27; *Netzel* v. *Todd,* 30 Ohio App., 300, 165 N. E., 47.

While in a case such as this there are no formal pleadings

in the usual sense, still the resolution and finding bear a similarity to a pleading. They represent the director's contentions. If they are carefully, conscientiously and accurately made, they should be of assistance to the jury in understanding his contentions.

But they are something more than the ordinary allegations of a litigant. They are, or should be, solemn determinations of value and damage by the sovereign in its dealings with the citizen. The director has a statutory duty to prepare such resolution and finding. This is an official act. The finding should be just and accurate and arrived at only after careful study. Justice being its purpose, the jury's knowledge of such a finding should not ordinarily be prejudicial to the director who made it.

The resolution and finding are essentially different in character from an offer to compromise litigation. Such offers should be encouraged and are therefore privileged. But there is no need to encourage the director to make a finding. It is his statutory duty to do so and to make it a matter of public record. The fact that it may lead to settlement does not change its essential nature.

Although the various items of land and buildings taken and damages to residue, as testified to by the director's witnesses, vary slightly from those contained in the finding, yet the aggregate testified to was greater than the total finding.

In *In re Appropriation of Easement for Highway Purposes over Property of Moores Lime Co.,* 107 Ohio App., 58, this subject was under discussion by this court. And the resolution and finding were held to be properly admitted into evidence as a prior inconsistent statement of the director because of the vast discrepancy between the amount of the finding and the much lower values testified to by the director's witnesses at the trial.

Yet even if opinions may differ as to the wisdom of sending the resolution and finding to the jury, not as evidence but as something akin to pleadings, there appears to be no abuse of discretion in doing so here.

Nor does the director undertake to show how he was prejudiced.

No error prejudicial to the director appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.