## City of Winooski v. State Highway Board

[ 207 A.2d 255 ]

December Term, 1964

Present: Holden, C. J., Shangraw, Barney and Smith, JJ. and Brooks, Supr. J.

Opinion Filed February 2, 1965

*Harry L. Goetz* for plaintiff.

*Joseph E. Frank* for the state.

**Holden, C. J.** This appeal presents four questions of law certified by the Chittenden County Court in a highway condemnation proceeding. The questions for review were framed from facts established in a pre-trial order prior to the hearing on the issue of damages.

Prior to August 17, 1961, the plaintiff, City of Winooski, owned forty-nine acres of land which it used in connection with the operation of its municipal water system. The defendant condemned 3.4 acres of this land for highway construction.

The land was taken in fee simple and included 2.3 acres from the plaintiff's water shed. The remaining 1.1 acres were taken from land outside the water shed area. It was agreed that the plaintiff was entitled to be compensated for land taken from its water shed according to a specific formula to establish the replacement cost of water per thousand cubic feet to the acre of water shed.

The plaintiff did not own the fee to all of the water shed which served its water system. Included in its water shed was 3.9 acres of land in the town of Colchester which the defendant acquired by eminent domain from Frank and Maria Bernardini. Compensation for taking the Bernardini lands was awarded the owners by order of the highway board on May 13, 1961. Similarly, compensation for 1.9 acres taken from the plaintiff's water shed was awarded to the Winooski Graded School District as the owner of that particular parcel, on May 15, 1961.

By pre-trial stipulation the plaintiff conceded that it had never acquired any interest in either of these parcels prior to the time they were taken by the defendant. It was further conceded that there are no defined streams flowing from these lands. However, the plaintiff claims compensation for the loss of surface water which heretofore flowed from the combined 5.8 acres to supply its reservoir.

The plaintiff also maintains that its charter conferred upon it the authority to condemn these lands for the purpose of acquiring additional water supply. Although this power has never been exercised, the city claims the seizure of these lands deprived the water department of its inchoate right to later condemn these lands thereby imposing a compensable loss within the highway condemnation law.

The court below dismissed both aspects of the city's claim and passed the question for review before final judgment pursuant to 12 V.S.A. §2386.

498

■ A condemnation proceeding to appropriate property for a public use is essentially an action *in rem*. The power of eminent domain acts upon the land itself. "Ordinarily an unqualified taking in fee by eminent domain takes all interests; and, as it takes the *res*, is not called upon to specify the interest that happens to exist. Whether or not, for some purposes, the new takers may be given the benefit of privity with the former holders, the accurate view would seem to be that such an exercise of eminent domain founds a new title and extinguishes all previous rights." Holmes, J., in *A. W. Duckett & Co.* v. *United States*, 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216, 218; *Emery* v. *Boston Terminal Co.*, 178 Mass. 172, 184, 59 N.E. 763; See, also, 18 Am. Jur. Eminent Domain, §112, p. 738; 29 C.J.S. Eminent Domain, §209, p. 1129.

■ The instant case is concerned exclusively with the 3.4 acres of land owned by the plaintiff at the time of the present taking and the lessening in value of the 45.6 acres which remained in the city. Damages which may have been visited upon the plaintiff in depriving it of the flow of surface water from lands owned by outsiders which have been the subject of separate and independent actions, are entirely beyond the jurisdictional reach of the instant case. The court below correctly dismissed the city's claim for damages resulting from the prior taking of the lands owned by Bernardini and the Winooski Graded School District.

■ The second aspect of the city's claim is to the effect that it has been deprived of the possibility of taking the same lands in some future condemnation proceedings for water shed purposes. Of course, it does not involve a property right. The plaintiff can have no vested interest in the power conferred upon it in its charter to take lands for water supply purposes.

The next question presented relates to the cost of reinforcing a dam which retains the waters in the city's upper reservoir. It appears from the records that the dam was located outside of the 3.4 acres condemned by the defendant.

It further appears that the city and the state entered into a separate "utility" agreement wherein the highway board agreed to excavate an area in the upper reservoir which would be the equivalent to the storage area which would be lost as a result of the taking of the 3.4 acre parcel. To perform this undertaking required the plaintiff to lower

the water level in the upper reservoir. The reduced water level caused damage to the earthen wall of the reservoir. The plaintiff seeks compensation for expenses incurred in repairing this damage. In its pretrial order, the court below ruled that this claim for reimbursement was not compensable under the highway condemnation statutes, albeit that it might be recoverable in some other form of action.

19 V.S.A. §221(2) is the statute which controls the plaintiff's compensation in this proceeding. It provides: "Damages resulting from the taking or use of property under the provisions of this chapter shall be the value of the most reasonable use of the property or right therein, and of the business thereon, and the direct and proximate lessening in the value of the remaining property or right therein and in the business thereon."

This section requires the owner shall be compensated (1) for the value of the land taken, (2) for the value of the loss of business thereon, and (3) for damages resulting to the balance of the land remaining. *Penna* v. *State Highway Board,* 122 Vt. 290, 292, 170 A.2d 630.

It is at once apparent that the expense incurred in repairing the dam did not directly accrue from the taking. The upper reservoir was not disturbed. Neither is the loss reflected in the value of the land remaining after the removal of the 3.4 acre parcel.

Such loss as the city may have sustained is assignable to an agreement that is separate and apart from the defendant's power to condemn. The claim was correctly excluded from this proceeding.

The next question concerns the loss of water from a field well located west of the condemned parcel on other lands of the plaintiff. Since the highway construction, the well has failed to produce. The plaintiff claims damage to its remaining property because of the loss of this source of its water supply. The court dismissed the claim. It certified this question: Is the loss of surface or percolating water from the well compensable even though the well is located on land not condemned by the defendant, as being an element of damage to the plaintiff's remaining property? We construe this inquiry to be confined to the issue of the loss of the existing water supply from the field well as a consequence of the highway construction.

The defendant offers support for the dismissal of the claim on the strength of our law regarding percolating waters, stated in *White River Chair Co.* v. *Connecticut Power Co.,* 105 Vt. 24, 48, 162 Atl.

859, and it is well established in this jurisdiction that there are no correlative rights in percolating waters between adjacent landowners. From this rule of law, the highway board advocates that the loss of percolating waters does not constitute a taking when the loss is caused by highway construction on adjacent property owned by the state.

The rule upon which the defendant relies is founded upon two principle considerations. First is the right of the owner of the soil to have free and unlimited right to take and use all that it contains including water that percolates in and through the ground, without regard to its effect on drainage from adjacent land holdings. The second consideration is the "secret, changeable and uncontrollable character of underground water—that we cannot well subject it to the regulation of law nor build upon it a system of rules as is done in the case of surface streams." *Chatfield* v. *Wilson*, 28 Vt. 49, 54; *Fire District No. 1* v. *Graniteville Spring Water Co.*, 103 Vt. 89, 91, 152 Atl. 42; *White River Chair Co.* v. *Connecticut Power Co.*, supra, 105 Vt. at 48.

But the defendant highway board in the exercise of its power of eminent domain is not an adjacent landowner in the usual or customary sense. It enters upon the private owner's premises *in invitum*, as a delegate of the sovereign state. The right of eminent domain confided to the board must be exercised within the prescript of constitutional and statutory requirements. See *In Re Appropriation of Easements for Highway Purposes*, 109 Ohio App. 6, 163 N.E.2d 181, 184; 29 C.J.S. Eminent Domain, §116, p. 929.

Chapter I Article 2nd of the Vermont Constitution requires "Whenever any person's property is taken for the use of the public, the owner ought to receive an equivalent in money." In state highway construction, the Legislature has translated this to mean the value of the property or right taken and the direct and proximate lessening in the value of the remaining property. 19 V.S.A. §221(2), supra.

Thus if the highway construction resulted in the destruction of the water supply in the well and this result produced a lessening in the value of the remaining property, the loss is compensable. Perhaps this will present problems in proof in establishing a casual connection between the loss of the field well and the highway construction. Nonetheless, if substantial evidence is brought forth to satisfy the triers of the fact that the loss of the property right was caused by the taking

of the land for highway purposes, the consequential damage is recoverable.

It is not important in this proceeding whether the well was supplied by surface or percolating waters. It appears that the water was collected in sufficient quantity by artificial means to establish a property right in the plaintiff. See *Harwood* v. *Village of West Randolph*, 64 Vt. 41, 45, 24 Atl. 97.

The third question must be answered in the affirmative.

The final question certified relates to the city's claim for compensation arising from the loss of a former access road to the reservoir which it had previously constructed on the land condemned by the defendant. The defendant has built a new road to replace the old way which affords access to the plaintiff's filter plant and reservoirs. The court below dismissed the plaintiff's claim for the depreciated cost of the old road.

There is nothing in the record certified to indcate that the original road was a private way, used exclusively by the city in its operation of the water system. We must indulge every presumption in favor of the ruling appealed from that is not inconsistent with the record. *Jones* v. *Wells-Lamson Quarry Co.*, 103 Vt. 178, 180, 153 Atl. 203.

Accordingly, we take it that the road in question was a public road constructed by the plaintiff in its governmental capacity. Property held by a municipality in its public, as distinguished from its proprietary function may be taken for public use without compensation to the subordinate unit. *City of Worcester* v. *Commonwealth*, 345 Mass. 99, 185 N.E.2d 633, 634; 11 McQuillin Municipal Corporations, §32.81 (3rd Ed.). See also *Town of Montpelier* v. *Town of East Montpelier*, 29 Vt. 12, 19.

Without searching the question of whether the substitute access road discharged the defendant's obligation to further compensate for the taking of the original highway, we hold the claim was properly dismissed. The fourth question presented is answered in the negative.

*Questions 1, 2 and 4 are answered in the negative. Question 3 is answered in the affirmative. Order dismissing plaintiff's claims is affirmed except as to the field well. As to that claim, order is reversed and cause remanded. Motion for reargument denied.*