## Harvey Drinkwine and Helen Drinkwine v. State of Vermont

[274 A.2d 485]

No. 98-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 1, 1970

*Langrock & Sperry,* Middlebury, for Plaintiffs.

*James M. Jeffords,* Attorney General, and *Jon C. Stahl,* Assistant Attorney General, for the State.

**Keyser, J.** This appeal is from an order of the Chancery Court for the County of Addison dismissing plaintiffs' bill of complaint for failure to state a cause of action. The sole question raised by the plaintiffs' appeal is whether the doctrine of absolute ownership of percolating waters should be modified in Vermont to include a standard of reasonable use.

The defendant in addition to its answer moved to dismiss the bill of complaint. Since this motion attacks the sufficiency of the petition, it is in the nature of a *demurrer* and its consideration depends entirely upon the facts stated in the petition. *Gerety* v. *Poitras,* 126 Vt. 153, 154, 224 A.2d 919 (1966). The following factual situation is shown by the allegations appearing in the petition.

The plaintiffs own property in Salisbury, Vermont, and had certain springs easterly of their home buildings. The State of Vermont through its Department of Fish and Game also owns property in Salisbury known as the Salisbury Fish Hatchery and operates the same. Sometime prior to November 1, 1969, the state had certain wells drilled in order to obtain water for use at the fish hatchery and began pumping water to supply the hatchery about the 1st of November.

The plaintiffs allege that since the pumping operations began, the defendant has pumped "unreasonable amounts of water" from the wells. They further allege that as a direct and proximate result of such unreasonable use, their water supply and springs and the percolating waters which have traditionally filled their springs have been drawn away and dried up. The plaintiffs claim that they have suffered great damage and have no adequate remedy at law. The remedy sought is an injunction against the state and the Fish and Game Department from continuing to operate the pumps and wells in question.

The plaintiffs admittedly are attempting to introduce a different doctrine into our law "to include a standard of reasonable use" in percolating waters between adjoining landowners. The established law of this State is that there are no correlative rights in percolating waters between adjacent landowners.

Our present rule was adopted at an early date (1855) in the case of *Chatfield* v. *Wilson*, 28 Vt. 49, 54–55 (1855). The court there held that there are no correlative rights existing between the proprietors of adjoining lands, in reference to the use of the water in the earth, or percolating under its surface. Such water is to be regarded as part of the land itself, to be enjoyed absolutely by the proprietor within whose territory it is; and the law governing the use of running streams is inapplicable.

This principle has since been followed in numerous cases which are collected and cited at page 49 in *White River Chair Co.* v. *Conn. River Power Co.*, 105 Vt. 24, 162 A. 859 (1931). In that case the court said at pages 48–49 of the opinion:

> "Our rule is the rule of the common law as laid down in the leading case of *Acton* v. *Blundell*, 12 M. & W. 324.

Such water is regarded as part of the land itself, and it belongs to the owner of the land as much as the land itself or the rocks and stones on it. There are no correlative rights between the owners of adjoining lands in reference to the use of such water; and the law governing the use of the water of streams flowing on the surface is not applicable. The owner of the soil may use it on his own land as he pleases or he may sell it to be used by others elsewhere although it deprives adjoining landowners of its use, or he may construct barriers which prevent such water from seeping into his soil or cause it to seep into the soil of another."

See also *Winooski* v. *State Highway Board,* 124 Vt. 496, 500, 207 A.2d 255 (1965).

In support of their contention the appellants argue that our established law relating to percolating waters should no longer be followed in light of present circumstances. They state that at the time this Court adopted the doctrine in 1855 the water resources in Vermont were more than adequate for any possible need but that this is no longer the case and they now need protection. And they assert that water in *every State* is now a scarce and valuable commodity.

"It is a rule in pleading that, whatever circumstances are necessary to constitute the cause of complaint or the ground of defense, must be stated in the pleadings; facts only are to be stated and not arguments or inferences, or matters of law." *Currier* v. *King,* 81 Vt. 285, 289, 69 A. 873 (1908). See *Campbell* v. *Walker,* 24 Del. (1 Boyce) 580, 76 A. 475, 476 (1910).

The facts necessary to sustain the petitioners' position are unavailable to us from any of the allegations in the bill. The bill also lacks any allegation of facts which establish a causal relationship between the pumping from the artesian wells and the depletion of water from the plaintiffs' springs. And it does not follow as a corollary that the pumping of water from the artesian wells caused the percolating water which supplied plaintiffs' springs to dry up. No facts are alleged which show that anything done by the defendant has resulted in a drop of the water table.

If the water resources of Vermont have become inadequate and as scarce a commodity as plaintiffs argue, the facts to

support this assertion are entirely lacking in the bill. Actually, there is no reference whatever to this subject matter in the bill.

*Judgment affirmed.*