STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Appeal of Parker, <u>et</u> <u>al.</u> | } | Docket No. 217-12-03 Vtec |
| | } | |
| | } | |

<u>Decision and Order on Appellants' Motion for Summary Judgment</u>

Appellants Sheree O. Parker, Keith Parker, Kelly Burke, Renee M. Burke, Anne Burke, Raymond Burke, Pauline Dwinell, Sterling Dwinell, Denise Felch, Robert Felch, Vera Frasier, Craig Frasier, Melvin Ladd, Claire Ladd, Anita Ladd, Lyn Morris, Joe Morris, Merriam Newhall, Fred Newhall, Laurie Nuissl, Paul Rico, Herbert Roya, Sherlie Roya, Richard W. Turner, Pamela Turner, Allison Wolf, and Tom Wolf appealed from a decision of the Development Review Board (DRB) of the Town of Berlin, granting the conditional use application of James Bond and Patricia Buxton, doing business as Cedar Spring, to remove, store, load into trucks and transport water in bulk from a spring. Cross-Appellants-Applicants ("Applicants") James Bond and Patricia Buxton cross-appealed from the same decision.

Appellants Pamela Turner and Richard W. Turner entered their appearance representing themselves; the remaining Appellants are represented by Gerald R. Tarrant,

Esq.; Cross-Appellants James Bond and Patricia Buxton entered their appearance representing themselves; Interested Persons Vernon Turner, Merrylees Turner and Robert A. Buxton entered their appearance representing themselves. The Town of Berlin, represented by Robert Halpert, Esq., participated in a telephone conference but did not otherwise enter an appearance or participate in this appeal.

Appellants move for summary judgment on Questions 1, 3, 4, and 7 from Appellants' statement of questions. The following facts are undisputed[1] unless otherwise noted.

The property proposed for development is located at 667 Stewart Road in the Rural Residential (R-40) zoning district in Berlin. A natural spring is located on the property in a wooded area approximately a quarter mile from the road, within a Class II wetland area. It overflows and provides water for a brook which flows into a beaver pond. In 2001 Applicants installed tiles in the spring to a depth of about 14 feet and extending approximately a foot above the level of the ground.

Applicants propose to remove water from the spring for bulk sale to a water bottling company. They propose to maintain the flow in the brook at at least 20 gallons per minute. Applicants propose to remove water from the spring by installing a submerged pump in the spring, which will pump the water through pipes to two storage tanks of unspecified size located near the edge of the woods. From the tanks, the water is

proposed to be fed by gravity to a hydrant or valve located in an 8' x 10' shed or structure near the road. A truck loading and turnaround area is proposed near the road.

Applicants propose to operate from 8:00 a.m. to 4:00 p.m. Monday through Friday, and to operate year-round during whatever periods that the road is passable and there is an adequate overflow of water. They propose eight truck trips per day to come to the property, load with water, and transport the water off the site. The expected weight of a loaded truck is approximately 54,000 pounds.

At a series of DRB hearings in 2003, the Board considered whether the proposed project was a permitted or conditional use in the R-40 district, whether therefore under §2.3(D) it was prohibited in the R-40 district, and whether it fell within the exemptions in §3.10, or whether it could be considered a cottage industry under §4.2(C) or "extraction of earth resources for commercial purposes" under §4.3(B). Applicants opted to apply to the DRB for approval of the project as a conditional use under §4.3(B).

Unlike the zoning regulations of some other municipalities, the Berlin Zoning Bylaws prohibit all uses not specifically listed as allowed permitted or conditional uses in a district, §2.3(D), unless they fall within the uses specifically exempted under §3.10. That is, the Zoning Bylaws do not provide a mechanism for approval of other uses similar to those in the listed categories.

Unless water from an on-site spring or well is to be piped off-site, the development of an on-site spring or well on a property serves some proposed use on the property, such as an agricultural or recreational pond, a group of residences, a business or professional office, a school, a retail store, a car wash, a public or private recreational swimming pool, a bottling plant, a truck terminal, or some other use. Some of these uses may be allowed permitted or conditional use categories in a particular zoning district, while others may not be.

The Rural Residential (R-40) zoning district was established with the purposes of protecting fragile natural resources, promoting continued agricultural activities, preventing strip development along major roadside corridors, and encouraging moderate density residential development, including limited commercial uses in appropriate locations. Table 2.3(A). Its listed use categories are found in Table 2.3. The question of whether the use proposed for a property is allowed in this or any particular zoning district does not depend on whether it is served by an on-site water supply; rather, it depends on the classification or use category of the proposed use. We therefore must analyze the functional components of Applicants' proposal to determine their use category or categories under the Zoning Bylaws.

Applicants' proposal does not include a residence; therefore it does not fall in the use category of either home occupation or cottage industry, both of which require the

business owner to reside on the lot. §4.4. Rather, Applicants' proposal is a bulk water shipping business, consisting of water storage tanks, a utility building housing the water standpipe or valve, and a truck loading and turnaround area. It does not fall within any of the listed allowed permitted or conditional uses in the R-40 zoning district.

Separate from the specific R-40 zoning district regulations, §4.3 allows the use category of "extraction of earth resources" to be considered for conditional use approval in any zoning district. Applicants argue that bulk shipping of groundwater from the property should be considered as "extraction of earth resources" under this section.

Extraction of earth resources is defined in §7.2 as:

The on-site removal of surface and subsurface materials, including soil, sand, gravel, stone, rock, minerals or similar materials. Typical uses include sand and gravel pits and quarries, and related operations such as the crushing, screening, and temporary storage of materials on-site (see Section 4.3). Specifically excluded from this definition is the grading and removal of dirt which is associated with and incidental to an approved site plan or subdivision, or an excavation associated with an accepted agricultural practice.

Extraction of earth resources requires conditional use approval under §5.6, in addition to meeting the specific standards of §4.3. The application under §4.3 must include erosion control and site reclamation plans showing, among other things, depth to groundwater,

which suggests in itself that groundwater is not within the earth resources considered for removal under this section.

While groundwater passes through the ground underneath its surface, it is not a 'subsurface material' in the sense of this definition, as it is not within the listed materials and is not similar to those materials or to the examples of 'typical uses.' First of all, all the listed materials are solid rock or mineral materials, of various particle sizes. They are not liquid, and do not flow when they are in place in the ground. The characteristic of those materials is that they are located in the place in which they were geologically deposited, and that the owner of the overlying land has the right to remove and sell them, subject to state and municipal regulation of the environmental effects and reclamation of the quarrying or mining operation.

Prior to 1985 legislative session, the common-law doctrine in Vermont regarding private rights in groundwater was similar: water percolating from a natural spring belonged to the owner of the land, who had the absolute right to use it on the property or to sell it to be used elsewhere, "as much as the soil and the stones," Fire District #1 v. Graniteville Spring Water Co., 103 Vt. 89, 91-92 (1930), so that others' riparian rights only arose once the percolating water became part of a flowing stream. See, Drinkwine v. State of Vermont, 129 Vt. 152, 153-54 (1970) and cases cited therein back to Chatfield v. Wilson, 28 Vt. 49 (1855). However, by Act No. 69, §§1 and 2, the 1985 legislature

abolished that doctrine, based on a more modern understanding of hydrogeology, stating that "the common-law doctrine of absolute ownership of groundwater is hereby abolished," and establishing that "groundwater is a mobile resource that is necessarily shared among all users." 10 V.S.A. §1410(a)(5) and (3). Groundwater removal does not fall within the use category of "extraction of earth resources" as the Zoning Bylaws are now written.

Thus, Applicants' proposal is not eligible for consideration for approval as a permitted or conditional use under the R-40 district regulations in Table 2.3, nor as a home occupation or cottage industry under §4.2, nor as a proposal for the extraction of earth resources under §4.3. As Applicants' proposal is not eligible for consideration in the R-40 zoning district under the present Zoning Bylaws, we need not reach the other issues in Appellants' Statement of Questions.

Of course, the Town may wish to amend the Zoning Bylaws. The parties should be aware that, under current 24 V.S.A. §4449(d), the DRB may apply a zoning bylaw amendment during the 150 days after the public notice has been issued for the amendment's first public hearing.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is GRANTED, and the DRB decision on appeal is VACATED and REMANDED, concluding this appeal.

Done at Barre, Vermont, this 3rd day of January, 2005.

_____

Merideth Wright

Environmental Judge

---

[1]  The application and its plans were not provided to the Court in connection with any party's memorandum; facts about the application and the property are taken from Applicant James Bond's testimony as reflected in the DRB's decision on appeal, which was provided as an undisputed attachment to Appellants' motion (but without the exhibits referenced in Paragraph B(4) of that decision).